## MYERS v. READING CO.
### Civil Action No. 4126.

District Court, E. D. Pennsylvania.

Dec. 28, 1945.

818

B. N. Richter, of Philadelphia, Pa., for plaintiff.

Henry R. Heebner, of Philadelphia, Pa., for defendant.

BARD, District Judge.

Defendant moves to set aside the verdict and judgment entered in favor of plaintiff and to have judgment entered in accordance with its motion for directed verdict under Rule 50 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for the reason that there was insufficient evidence to support the verdict.

Plaintiff brought this action under the Federal Employers' Liability Act [1] and the Safety Appliance Act [2] to recover for injuries sustained while classifying coal hoppers at the Port Richmond yard of the Reading Company.

The evidence adduced at trial pertinent hereto follows:

Plaintiff was employed by defendant as a conductor in charge of a freight train shifting crew at its Port Richmond yard. In the early evening of June 10, 1944, the crew shifted seven coal cars and coupled them to three other cars standing near a bumper at the end of the classification track. The track was curved and, at the completion of the coupling operation, the engine was at the far end of the curve so that the engineer did not have a clear view of the other members of the crew. Plaintiff directed a new employee to set the brakes on each car in accordance with company regulations before the crew proceeded to a new operation. Plaintiff checked the cars and, when he reached the seventh car from the engine, discovered the brake had not been tightened. He then mounted the brake step or platform and began to tighten the brake.

Plaintiff testified that he felt a movement of the train and a quick jar on his car, as though the slack was being run out in order to uncouple the engine; that he signaled "stop" with the lantern he was carrying on his left arm; that the wheel on the hand brake kicked back; that he could not hold the brake; and that he fell to the ground injuring his back.

Several members of the switching crew appeared on behalf of defendant. They testified that the train did not move after the cars were coupled; that they found plaintiff on the ground but did not see him fall from the brake step; and that earlier in the evening plaintiff had complained of illness.

Under the provisions of Rule 49(b) of the Federal Rules of Civil Procedure, 28 U.

[1] Act of April 22, 1908, c. 149 § 1 et seq., 35 Stat. 65, as amended August 11, 1939, c. 685, § 1 et seq., 53 Stat. 1404, 45 U.S.C.A. § 51 et seq.

[2] Act of April 14, 1910, c. 160, § 2, 36 Stat. 298, 45 U.S.C.A. § 11.

S.C.A. following section 723c, I submitted six written interrogatories to the jury and instructed the jury to answer the interrogatories in writing and, in addition, to render a general verdict. The interrogatories and the answers thereto are set forth in the margin.[3] The jury returned a verdict in favor of plaintiff in the amount of $5000.

In the complaint and in the presentation of evidence, plaintiff offered two theories upon which recovery could be predicated. First, plaintiff contended that, while he was tightening the brake, the train moved without warning and without authorization from plaintiff, who was train conductor in charge of the work, and that this movement constituted negligence on the part of defendant's employees which would justify recovery under the Federal Employers' Liability Act. Secondly, plaintiff contended that the brake was not efficient and contributed to his injuries, so that he was entitled to recover under the Safety Appliance Act.

As indicated in their answers to the interrogatories, the jury accepted a portion of defendant's evidence and found as a fact that the train did not move after the coupling operation. Thus the jury rejected plaintiff's theory of recovery for negligence under the Federal Employers' Liability Act.

However, the jury did find as a fact that the hand brake was inefficient and that it caused or contributed to plaintiff's injury.

Defendant moved for judgment non obstante veredicto on the ground that there was insufficient evidence to support a finding that the brake was inefficient and that, as a matter of law, plaintiff failed to make a case under the Safety Appliance Act. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147. In determining the motion for judgment non obstante veredicto I must assume that plaintiff's evidence proves all that it reasonably may be found sufficient to establish and must draw in favor of plaintiff all inferences which are fairly deducible from these facts. Baltimore & Ohio Railroad Co. v. Groeger, 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419; Hawkins v. Sims, 4 Cir., 137 F.2d 66; Ætna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350. However, since the jury in answering the interrogatories found as a fact that the train did not move after the coupling operation, and there is adequate evidence to support that finding, I must accept that finding notwithstanding plaintiff's testimony to the contrary.

The sole question for determination here is whether there was sufficient evidence to permit the jury to base their verdict for plaintiff upon a finding that the brake in question was not efficient.

The evidence with regard to the alleged inefficiency of the brake was extremely meager.[4] After reconciling plaintiff's evidence with the jury's answers to the inter-

---

[3] 1. Was the brake in question an efficient brake?
Answer "yes" or "no."  No
2. If you find that the brake in question was not an efficient brake, did that fact contribute to or cause any injuries to the plaintiff?
Answer "yes" or "no."  Yes
3. Did the train move after the seven shifted cars were coupled to the three standing cars?
Answer "yes" or "no."  No
4. If you find that the train moved after the cars were coupled, did that fact contribute to or cause any injuries sustained by the plaintiff?
Answer "yes" or "no."  No
5. Was the plaintiff thrown from a moving train?
Answer "yes" or "no."  No
6. Did the plaintiff become ill while walking on the ground, without having been thrown from the train?
Answer "yes" or "no."  No
[4] The plaintiff's testimony on direct examination was as follows:

Q. Suppose you describe to the jury just how you were standing, and what position your lantern was in, and what you were doing? A. I had the lantern in this hand (indicating) and I got a hold of the hand-brake—
Q. What does the lantern have—a handle? A. Yes, a handle.
Q. And you had your arm through the handle? A. Yes.
Q. And what were you doing? A. I was tightening the brake—it was kind of stiff and sticking—it was pretty hard to signal with the one hand and to get the brake on.
Q. With the ordinary brake wheel, do you have the difficulty that you had with this wheel? A. Not ordinarily.
Q. What was the difference between this wheel and the ordinary wheel? A. It was kind of stiff, and like a spring,—like a shoe kicking back.
Q. And you started to try to set it? A. That is right.
Q. Had you given any orders to anybody to move this train? A. I had not.

rogatories in a manner most favorable to plaintiff, the credible evidence offered by plaintiff on that issue appears to be as follows: Plaintiff stood on the brake step with a lantern hung over his left arm tightening the hand brake. The brake wheel was "kind of stiff and like a spring" and plaintiff testified that he ordinarily did not have as much difficulty with a brake wheel. Upon a mistaken belief that the train had begun to move, plaintiff signaled "stop" with the lantern on his left arm, holding the wheel with his right hand. Plaintiff could not hold the wheel, although it was not all the way on, and the wheel kicked back. Plaintiff fell to the ground and was injured. The jury found as a fact that the train did not move at any time after the cars were coupled and that plaintiff was not thrown to the ground from a moving train.

▪ The Safety Appliance Act provides that all cars must be equipped with "efficient" hand brakes.[5] The purpose of the statute is to supplant the qualified common law duty of care of the railroad with an absolute duty. Therefore, if the railroad does not comply with the prescribed standard, it violates the law and must compensate those injured as a result thereof without regard to proof of negligence. St. Louis, I. M. & S. R. Co. v. Taylor, 210 U.S. 281, 28 S.Ct. 616, 52 L.Ed. 1061.

In Didinger v. Pennsylvania R. Co., 6 Cir., 39 F.2d 798, at page 799, the court said: "There are two recognized methods of showing the inefficiency of hand brake equipment. Evidence may be adduced to establish some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner." To the same effect, see Altman v. Atlantic Coast Line R. Co., 5 Cir., 18 F.2d 405; Newkirk v. Los Angeles Junction R. Co., 21 Cal.2d 308, 131 P.2d 535. Plaintiff made no attempt to prove a specific mechanical defect in the brake, but relied on the latter method of proof—namely, that it failed to function normally although operated with due care.

▪ Plaintiff relied on an alleged failure in performance of the brake when used with due care to raise the inference of some latent defect. Philadelphia & R. Ry. Co. v. Auchenbach, 3 Cir., 16 F.2d 550, certiorari denied 273 U.S. 761, 47 S.Ct. 476, 71 L.Ed. 878. In order to prove the inefficiency of the brake in this manner, it was incumbent upon plaintiff to prove two facts: First, that he operated the hand brake with due care; second, that, when operated with due care, the hand brake failed to function in the normal, natural, and usual manner. Didinger v. Pennsylvania R. Co., supra.

To prove the first essential factor, plaintiff testified that he had difficulty in tightening the brake in the normal manner and demonstrated to the jury the manner in which he had tightened the brake. But it must be remembered that before plaintiff completed the braking operation he removed his left hand from the wheel to signal with his lamp. It seems to me that plaintiff's testimony and physical demonstration of the normal manner in which he tightened the brake can be applied only to that portion of the braking operation up to the moment when plaintiff gave the "stop" signal. At that moment plaintiff was holding

Q. Had you given any permission to anyone to move this train? A. No permission at all.

Q. Had you given any signal to move this train? A. I did not.

Q. Go on, and tell His Honor and the members of the jury what took place while you were standing up there? A. As I was tightening the brake,—just that quick,—I felt something like the slack being run out, getting ready to uncouple.

Q. What did you feel on your car? A. A quick jar, and I took this hand to signal "stop" (indicating).

Q. What did you signal? A. I signaled "stop" the best I could and hold on, but I went down; I lost my hold and down I went.

Q. What happened to the wheel on the hand-brake while you were holding the wheel? A. That kicked back.

Q. What do you mean by that? A. I was putting it on this way (indicating), and it kicked right back off.

Q. Could you hold it? A. No, I couldn't,

Q. Was it pulled all the way on? A. Oh, no.

Q. What happened to you? A. Down I went.

Q. Why did you swing the lantern? A. To stop—I didn't know whether they were moving on—

Q. Anyway, whatever that move was that caused the jar, you tried to stop it? A. That is right.

Q. You didn't want them to move? A. I did not.

[5] 45 U.S.C.A. § 11.

the partially tightened brake wheel with one hand and it was at that moment when the wheel "kicked back." Was plaintiff operating the hand brake with due care at this moment? Plaintiff offered no evidence from which the jury could infer that plaintiff's attempt to hold a partially tightened hand brake with one hand was or was not careful operation of a hand brake.

Even if it can be assumed that plaintiff performed the entire brake tightening operation with due care, he failed to produce evidence from which the jury could reach a rational conclusion as to whether the subsequent performance of the brake was in the normal, natural and usual manner. Plaintiff failed to introduce any evidence regarding the mechanism of the brake or any other evidence from which the jury could rationally deduce whether or not the "kick-back" or spinning of the brake wheel was the normal and usual performance of a brake wheel under the circumstances. Certainly, if an efficient wheel would "kickback" under the same conditions, the jury could not be permitted to find that the brake was inefficient, merely because it spun around. Plaintiff failed to produce any evidence which would permit the jury to make a comparison between the performance of the brake wheel in the instant case and a purportedly normal reaction of a brake wheel under the same circumstances so that the jury might rationally conclude that the brake in question did not perform in a normal, natural and usual manner.

From the paucity of proof offered by plaintiff the jury might logically draw the inference that the brake was inefficient and might have just as logically drawn the inference that the brake reacted normally and efficiently under the circumstances. Since the evidence supports equally two inconsistent inferences of fact, it establishes neither. In this situation the jury should not have been permitted to draw conclusions from plaintiff's evidence regarding the inefficiency of the brake since their conclusion of necessity would have to be based on conjecture and speculation. Grand Trunk Western R. Co. v. Holstein, 6 Cir., 67 F.2d 780. The burden was upon plaintiff to prove that the brake acted inefficiently in order to recover. This he failed to do. Therefore, as a matter of law, judgment must be for defendant. Pennsylvania Railroad Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819; United States Fidelity & Guaranty Co. v. Des Moines Nat. Bank, 8 Cir., 145 F. 273; Patton v. Texas & Pacific Railway Co., 179 U.S. 658, 21 S.Ct. 275, 45 L.Ed. 361.

Plaintiff has relied on a number of cases [6] which have allowed recovery upon proof that a hand brake failed to perform normally when operated with due care. These cases set forth the accepted interpretation of inefficiency under the hand brake provision of the Safety Appliance Act. However, they are all distinguishable on their facts from the instant case. In each of the cases cited by plaintiff there was adequate proof that plaintiff used the brake with due care in the normal and ordinary manner, and that the brake did not perform normally. There was also evidence as to the mechanical operation and safeguards of the brake. Thus in each of these cited cases the plaintiffs presented evidence from which the jury could find that the hand brake was inefficient and could return a verdict in their favor.

As a matter of law, plaintiff failed to prove a case by competent evidence under the Safety Appliance Act. Since the jury's verdict in favor of the plaintiff as indicated by the answers to the interrogatories, was based solely on a theory of recovery under that Act and plaintiff failed to prove a case under the Act as a matter of law, defendant is entitled to judgment non obstante veredicto. Montgomery Ward & Co. v. Duncan, supra; McGivern v. Northern Pac. R. Co., 8 Cir., 132 F.2d 213.

Defendant's motion for judgment non obstante veredicto is granted.

[6] Didinger v. Pennsylvania R. Co., supra; Spotts v. Baltimore & O. R. Co., 7 Cir., 102 F.2d 160, certiorari denied 307 U.S. 641, 59 S.Ct. 1039, 83 L.Ed. 1522; Newkirk v. Los Angeles Junction R. Co., supra; Wild v. Pitcairn, 347 Mo. 915, 149 S.W.2d 800, certiorari denied 314 U.S. 638, 62 S.Ct. 72, 86 L.Ed. 512.